**ALL AMERICAN LIFE & CASUALTY COM-
PANY, Appellant (Defendant below),**

v.

**John KRENZELOK, Appellee
(Plaintiff below).**

**John KRENZELOK, Appellant
(Plaintiff below),**

v.

**ALL AMERICAN LIFE & CASUALTY COM-
PANY, Appellee (Defendant below).**

**Nos. 3427, 3428.**

Supreme Court of Wyoming.

Jan. 14, 1966.

James E. Birchby, of Birchby & Birchby, Sheridan, for All American Life & Casualty Co.

Bruce P. Badley, Sheridan, for John Krenzelok.

Before PARKER, C. J., and HARNS-BERGER, GRAY and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Judgment was entered in the District Court of Sheridan County, on a verdict of the jury, in favor of John Krenzelok, beneficiary and plaintiff, against All American Life & Casualty Company of Chicago, Illinois, insurer and defendant, for payment of a policy of $1,000. The policy insured the life of plaintiff's mother, Mary Krenzelok. The company has appealed.

Application for insurance was made by Mary Krenzelok September 6, 1962, by mail. The applicant, an elderly woman of foreign extraction, could neither read nor write the English language, although she could sign her name, and her son had prepared the application. It does not appear from the record whether applicant knew what was stated in the application she signed. The policy was issued October 1, 1962, and returned by mail. The company did not have a resident agent in Wyoming. The insured died of cerebral hemorrhage approximately one year after the policy was issued—on October 19, 1963.

In the application certain questions were asked concerning the past and present state

of health of the applicant, and this admonition was given:

"Please answer the following questions to the best of your knowledge and belief. Your approval of any insurance granted under the policy is based on your answers, and this application becomes part of such policy."

Although the insurance company claims erroneous answers were given to more than one of the questions, we will concern ourselves only with the answer to question (D), which reads: ‑

"IF YOU ANSWERED 'YES' TO ANY OF THE ABOVE QUESTIONS, EXPLAIN FULLY HERE (Include Date, Name & Address of Doctor)"

The application showed the answer "Yes" to one of the above questions referred to, the answer being to the effect that Mary Krenzelok had received medical attention or surgical advice or treatment, or been confined to a hospital, sanitarium, asylum or similar institution in the past three years. The explanation to this "Yes" answer, under question (D), was this:

"Removed cateract [sic] from eye. 2 yrs ago.
Dr. Downing 144 S. Main Sheridan, Wyo
Bad case of flue [sic] May 15, 1962
Dr. Pete Schunk 248 W. Works
 Sheridan, Wyo."

Undisputed testimony in the case, supported by hospital records which were introduced into evidence, showed that Mary Krenzelok had her cataract operation by Dr. Downing more than three years previously, which meant it needed not be mentioned. However, she had been hospitalized in the Memorial Hospital of Sheridan County, Wyoming, from January 24, 1960, to February 1, 1960, and treated for a condition diagnosed as arteriosclerotic heart disease and congestive heart failure. She was again in the same hospital from February 2, 1960, to February 11, 1960, on account of two fractured ribs.

Then, according to further undisputed evidence, Mary Krenzelok was again admitted to the same hospital on May 16, 1962 and confined until May 29, 1962, for bronchopneumonia. During both the 1960 and 1962 confinements, she was treated by Dr. Schunk.

We will not discuss the confinement during May, 1962, since the answer to question (D) might be construed as fairly covering it. But there was nothing in the application which would disclose information concerning Mary Krenzelok's hospitalization in January and February, 1960, which was within three years previous to the application.

Fractured ribs may not indicate a questionable health condition, but there can be no denial from the evidence in this case that Mary Krenzelok had a serious health condition when she was in the hospital in January, 1960. Not only is the application silent about both the hospitalization and medical treatment at that time, but the plaintiff, who is beneficiary under the policy and who as above noted prepared the application, offers no excuse or justification for the omission. It is not disputed that both he and his mother knew of the hospitalization and treatment.

Mrs. Krenzelok may not have known the seriousness of her ailment when she was hospitalized and treated in January, 1960, but she and her son did know she had been in the hospital and received medical treatment at that time. This should have been revealed in the application. Mutual Life Ins. Co. of New York v. Morairty, 9 Cir., 178 F.2d 470, 475, certiorari denied Morairty v. Mutual Life Ins. Co. of New York, 339 U.S. 937, 70 S.Ct. 673, 94 L.Ed. 1355; North American Life Ins. Co. of Chicago v. Korrey, 113 Colo. 359, 157 P.2d 149, 153–154; Doell v. Prudential Insurance Company of America, 24 Cambria 1, 6, 28 Dist. & Co.R.2d 637, 640–641.

■ The information concealed by an incomplete answer to question (D) and not imparted by the application, as prepared by

the beneficiary-son, was material to the risk. See Comer v. World Insurance Company, 212 Or. 105, 318 P.2d 916, 923; and Magee v. National Life and Accident Insurance Company, 201 Pa.Super. 140, 192 A.2d 752, 755. See also Hauser v. American Central Insurance Company, St. Louis, Missouri, D.C.La., 216 F.Supp. 318, 322.

There are numerous cases which hold a concealment or failure to disclose periods of past hospitalization and medical treatment will invalidate a policy, regardless of whether applicant had a fraudulent intent to deceive. The following are cited in support of such statement:

National Life and Accident Insurance Company v. Gorey, 9 Cir., 249 F.2d 388, 393–394; Bushfield v. World Mutual Health and Accident Insurance Company of Pennsylvania, 80 S.D. 341, 123 N.W.2d 327, 329; Cohen v. Penn Mutual Life Ins. Co., 48 Cal.2d 720, 312 P.2d 241, 244; Germania Life Ins. Co. of New York City v. Klein, 25 Colo.App. 326, 137 P. 73, 75. See also Cass Bank & Trust Company v. National Indemnity Company, 8 Cir., 326 F.2d 308, 309–310, where the same principle is followed in connection with collision insurance.

Defendant's avoidance of the policy of insurance is based on (1) concealment and (2) fraudulent representation. If either defense is good, the policy may be avoided. Charlton v. Wakimoto, 70 Idaho 276, 216 P.2d 370, 372–373; Lindlauf v. Northern Founders Insurance Company, N.D., 130 N.W.2d 86, 89.

We think there was no proof of intentional fraud on the part of Mrs. Krenzelok, but concealment of matters material to the risk was proved without substantial contradiction. This being so, it is not necessary to consider the defense of fraudulent representation

 A fraudulent intent on the part of the insured is not a requisite of concealment. Consequently, concealment of facts material to the risk will avoid the policy

even though the concealment was the result of inadvertence or mistake and was entirely without fraudulent intent. 29 Am. Jur., Insurance, § 693, p. 958. See Telford v. New York Life Ins. Co., 9 Cal.2d 103, 69 P.2d 835, 837; Pierre v. Metropolitan Life Ins. Co., 22 Cal.App.2d 346, 70 P.2d 985, 987. See also Newman v. Firemen's Ins. Co. of Newark, N. J., 67 Cal.App.2d 386, 154 P.2d 451, 453–454, where the application was for fire insurance and the applicant did not know his statement was erroneous.

The record discloses that the insurance company in the case at bar offered to return to the beneficiary all premiums paid on the policy in the amount of $148.20, and a sufficient tender thereof was made. Judgment should have been directed or entered, notwithstanding the verdict, in favor of defendant, subject however to a refund being made of all premiums paid on the policy.

### Cross-Appeal

 In a cross-appeal, John Krenzelok complains that the district court did not allow him a judgment for attorney fees. The claim for such fees was made under the provisions of § 26–65, W.S.1957, which provides in any action against an unauthorized foreign insurer on a contract of insurance issued or delivered in this state —like the one involved in this case—the court shall allow the plaintiff a reasonable attorney fee, if it appears to the court that refusal of payment was "vexatious and without reasonable cause."

Inasmuch as our conclusion is that judgment should have been entered for defendant, subject to a refund of premiums, and that the case must be reversed, it follows there was reasonable cause for the company's refusal to make payment. The cross-appeal of John Krenzelok is therefore without merit.

Reversed and remanded for proceedings consistent with the views herein expressed.