454 P.2d 956

INDUSTRIAL INDEMNITY COMPANY, a corporation, Plaintiff-Appellant,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANIES, a corporation, and Louis Eugene Stauffer and Stanley D. Zweigart, Defendants-Respondents.

No. 10349.

Supreme Court of Idaho.
May 29, 1969.

**60**

---

Racine, Huntley, Herzog, Olson & Zener, Pocatello, for appellant.

Baum & Peterson, Pocatello, for respondents.

McFADDEN, Chief Justice

On December 5, 1964, a 1964 Corvette, owned by Stanley Zweigart and driven by Eugene Stauffer, collided with an automobile occupied by Wallace J. and Larue Cook. The Cooks sustained personal injuries and instituted an action in the district court against Stanley Zweigart and Eugene Stauffer to recover damages. Mr. Stauffer was insured by respondent United States Fidelity and Guaranty Company. Whether Mr. Zweigart and Mr. Stauffer were also covered by an insurance policy issued by appellant Industrial Indemnity Company is the issue presented to this court for consideration.

Industrial Indemnity had issued a comprehensive liability policy to the Zweigart Packing Corporation, Fred A. Zweigart, Sr., Fred A. Zweigart, Jr., and Thayne Bargason, all of whom are listed as named insureds in the policy. This policy contained a physical damage endorsement which listed the automobiles covered by the physical damage provision of the policy. Included in this endorsement was a 1961 Corvette, listed as a private passenger vehicle owned by Fred A. Zweigart, Sr.

In the fall of 1964 Stanley Zweigart, the 18 year old son of Fred A. Zweigart, Sr., purchased a 1964 Corvette for which the title was taken in Stanley Zweigart's own name. He contacted Mr. A. R. Ebel, now deceased, of Bryan & Company (the agency which handled this insurance policy issued to Zweigart Packing Corporation), for the purpose of obtaining insurance on the new Corvette. According to the affidavit of Stanley Zweigart, he advised Mr. Ebel that

> "he had acquired a 1964 Corvette and that that Corvette should replace the 1961 Corvette previously listed on the policy * * *."

He did not explicitly advise Mr. Ebel that title to the car was in his own name.

Mr. Ebel then contacted Industrial Indemnity and requested that they make the appropriate change in the policy. Industrial Indemnity, however, requested further information regarding ownership of the vehicle, the name of the principal driver, and the disposition of the 1961 Corvette. Without further communicating with Stanley Zweigart, Mr. Ebel replied to this request, stating

> "1964 Corvette owned by Zweigart Packing and driven by Stanley Zweigart. '61 Corvette replaced by '64."

It can be seen in retrospect that this information was incorrect because title to the vehicle was actually in Stanley Zweigart's name. He was, however, as stated by Mr. Ebel, the principal driver. Upon receipt of the information from Mr. Ebel, Industrial Indemnity made the requested change in the policy, effective October 20, 1964.

The automobile accident which precipitated the instant litigation subsequently occurred on December 5, 1964. Eugene Stauffer was driving the Corvette at the time of the accident with the permission

and in the company of Stanley Zweigart. When the Cooks filed their personal injury action against Stauffer and Zweigart, each defendant requested his insurance company to assume the defense. United States Fidelity refused, and Industrial Indemnity, after obtaining a reservation of rights against United States Fidelity, assumed the defense. The present action was then instituted to determine which of the two insurance companies was liable. Meanwhile, an opportunity for settlement of the Cooks' tort action arose, which was accepted with each company paying to the Cooks $9,500.-00. The companies then entered into a stipulation regarding reimbursement of the $9,500.00 plus attorney fees, depending upon the outcome of the present action.

On March 7, 1968 the respondent moved for summary judgment, which motion was granted. On August 28, 1968 the trial court entered its findings of fact and conclusions of law, and on September 26, 1968 rendered its judgment in favor of the respondent. Industrial Indemnity has appealed to this court from the findings of fact, conclusions of law, and judgment.

At the outset it should be pointed out that findings of fact are not necessary in disposing of a case by summary judgment. In the present case, however, we will treat the court's findings as a statement of facts which in the trial court's opinion are not genuinely in dispute and as a statement of the basis for the trial court's decision. See 3 Barron & Holtzoff, Federal Practice and Procedure (Wright ed. 1958) § 1242, pp. 201–202.

█ The appellant has assigned as error the trial court's purported finding of fact and conclusion of law that the insurance policy issued to Mr. Stauffer by respondent is "excess coverage" while the policy issued by appellant covering Stanley Zweigart is "primary coverage." Appellant, however, has not supported this assignment of error with points and authorities or argument. It is well settled that under such circumstances the assignment will not be considered. Bolen v. Baker, 69 Idaho 93,

203 P.2d 376 (1949); Michael v. Zehm, 74 Idaho 442, 263 P.2d 990 (1953); Bjornstad v. Perry, 92 Idaho 402, 443 P.2d 999 (1968).

Appellant's principal contention is that the trial court erred in granting respondent's motion for summary judgment. It seeks to avoid liability under the insurance policy issued to Zweigart Packing Corporation mainly on the ground that Stanley Zweigart is the legal owner of the 1964 Corvette. Appellant contends that Stanley Zweigart falsely represented to Mr. Ebel that the corporation owned the vehicle and that this was a misrepresentation of material fact which, under I.C. § 41–1811, precludes any recovery under the insurance policy. The appellant maintains that the 1964 Corvette was added as an endorsement on the corporation's policy while appellant was under the erroneous impression, created by Stanley Zweigart, that the vehicle was owned by the corporation, and that had the true facts been known appellant could not have insured Stanley Zweigart under that policy because he was not a named insured on the policy.

█ It is our opinion that the appellant's reliance upon an alleged misrepresentation of ownership is untenable. Stanley Zweigart did not directly misrepresent the ownership of the Corvette. He made no statements that the Zweigart Packing Corporation owned the vehicle. His statement to Mr. Ebel to the effect that he had acquired a new Corvette would seem to indicate that he was the owner. Yet it is our conclusion that Stanley Zweigart, who stated in his unrefuted affidavit that he was unfamiliar with insurance procedures, at most innocently omitted the facts regarding ownership. Mr. Ebel did not inquire into the ownership of the vehicle, even after this specific information had been requested by the appellant, his principal. Rather he answered his principal's inquiry on his own volition, without further communicating with Stanley Zweigart, assuming that the corporation owned the vehicle. Appleman states that "Where no question was directed to the fact concealed,

and there is no evidence to show that the insured thought that the matter concealed was material, there could be no concealment unless such fact was material as a matter of law." 7 Appleman, Insurance Law and Practice, § 4252, p. 8.

■ The next reason for our conclusion that appellant cannot avoid liability on the grounds of a misrepresentation of ownership is that under these circumstances presented, a misrepresentation of ownership, assuming that it occurred, is not a misrepresentation of a material fact which would preclude recovery under the policy. I.C. § 41–1811 provides that

"* * * Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:

(a) Fraudulent; or

(b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(c) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise."

There is no suggestion in any of the evidence or arguments of the parties that the misrepresentation, if any, was fraudulent. Also, nothing was "required" of Stanley Zweigart by an application or inquiry regarding ownership, and there is nothing in the record to indicate that Industrial Indemnity would not have insured Stanley Zweigart if the true facts had been known, and the record reflects that appellant had insured Stanley Zweigart while he was operating the 1961 Corvette which was in his father's name. Consequently it is our opinion that I.C. § 41–1811(a) and (c) are inapplicable to the present case.

Appellant argues, however, that the issue of ownership is material to the risk assumed by appellant and that recovery is therefore barred by I.C. § 41–1811(b). Ownership of an automobile is undoubtedly material to the risk assumed by an insurance company in some cases. See Travelers Indemnity Co. v. American Cas. Co., 226 F.Supp. 354 (S.D.W.Va.1964); Merchants Indem. Corp. of New York v. Eggleston, 68 N.J.Super. 235, 172 A.2d 206 (N.J.1961); Southern Farm Bureau Cas. Ins. Co. v. Allen, 388 F.2d 126 (5th Cir. 1967); Didlake v. Standard Ins. Co., 195 F.2d 247, 33 A.L.R.2d 941 (10th Cir.1952). In each of these cases the court held that misrepresentation of ownership even though innocent, barred recovery by the true owner of the automobile under a policy issued in the name of a person represented as the owner.

These decisions are, however, distinguishable from the case at bar, as the following language from Didlake v. Standard Ins. Co., supra, indicates:

"* * * [I]t is a reasonable assumption that ordinarily the major use of the automobile will be by the owner and the named insured. Hence, it seems to us that the age and driving habits of the owner and named insured and whether he possesses normal mental and physical faculties are facts which should be, and are, considered by an insurance company in determining whether it will assume the risk to be covered by the policy.

Where the application for the insurance is made by the true owner and he is to be designated in the policy as the named insured, the insurance company, before issuing the policy, may investigate the age and other facts with respect to such owner which it deems important in determining whether to issue the policy, but where the fact with respect to ownership is misrepresented and the identity of the true owner is concealed with the purpose of obtaining coverage for the true owner under the omnibus clause, no such opportunity is present." 195 F.2d 247, at 251.

In the present case Industrial Indemnity knew who was the principal driver of the car, an eighteen year old. It could therefore assess the risk involved just as accurately as it could had it known the name of the true owner. This situation is quite unlike the situation in the above cited cases in which the owner and principal driver of the vehicle was misrepresented or concealed.

The present case is more closely analogous to Buckeye Union Cas. Co. v. Robertson, 206 Va. 863, 147 S.E.2d 94 (1966), in which the defendant's mother purchased a car in her own name, but gave the exclusive use of the car to the defendant. He applied for insurance in his own name and advised the company that he would be the sole operator of the vehicle. A policy was issued in his name, but following an accident the insurance company denied liability on the ground that the defendant was not the owner of the automobile. In holding the insurance company liable, the court stated:

"Buckeye issued the policy with full knowledge of the fact that defendant would have exclusive possession of and control over the automobile and be its sole operator. Its investigation disclosed that defendant's parents were residing in Japan, and obviously they would not be operating the car. * * * The fact that defendant was not the registered owner of the car was a technicality which was immaterial under the facts and circumstances here. Thus defendant's failure to disclose that the car was registered in his mother's name was not as a matter of law material to the risk assumed by Buckeye." 147 S.E.2d at 96–97.

To the same effect are Standard Accident Ins. Co. v. Starks, 351 F.2d 895 (6th Cir. 1965) and Mid-States Ins. Co. v. Brandon, 340 Ill.App. 470, 92 N.E.2d 540 (Ill.App. 1950).

A misrepresentation of ownership may, in some cases, be material to the risk assumed by the insurance company. In the present case, however, appellant knew that Stanley Zweigart had been the principal operator of the 1961 Corvette and he would be the principal operator of the 1964 Corvette, which was its replacement. Under these circumstances, the misrepresentation of ownership, if any, was not material to the risk.

The final reason for rejection of the appellant's contention that the policy insuring Stanley Zweigart is void because of his ownership of the vehicle is that the appellant has waived any right to raise the issue of ownership as a means of avoiding liability. This court has held that when an insurance company or its agent has knowledge of facts which would justify a recision of the policy at the time the policy is issued, but takes no steps to rescind it, the company waives the right later to insist upon those facts in avoidance of the policy. Carroll v. Hartford Fire Ins. Co., 28 Idaho 466, 154 P. 985 (1916); Young v. California Ins. Co., 55 Idaho 682, 46 P.2d 718 (1935); Collard v. Universal Auto. Ins. Co., 55 Idaho 560, 45 P.2d 288 (1935); 17 Appleman, Insurance Law and Practice, § 9631, p. 355. Similarly several cases from other jurisdictions have held that a misrepresentation or mistake of ownership of an automobile does not preclude recovery under a contract of insurance when the insurance agent had knowledge of the true status of the title at the time the policy was issued. See Howe v. Howe, 87 N.H. 338, 179 A. 362 (1935); Peck v. Hartford Accident & Indem. Co., 207 Wis. 344, 241 N.W. 372 (1932); Miller v. United Pacific Cas. Ins. Co., 187 Wash. 629, 60 P.2d 714 (1936); Commercial Standard Ins. Co. v. Paul, 35 Tenn.App. 394, 245 S.W.2d 775 (1951); 6 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.) § 3629, pp. 251–253. See also Charlton v. Wakimoto, 70 Idaho 276, 216 P.2d 370 (1950).

The appellant contends that it had no actual knowledge of the ownership of the vehicle and that any knowledge possessed by Mr. Ebel could not be imputed to

it because Mr. Ebel was an agent for Stanley Zweigart, not for the appellant. The record establishes, however, that Mr. Ebel was the licensed agent for the appellant, and under such circumstances his knowledge is imputed to the appellant. Carroll v. Hartford Fire Ins. Co., supra; Young v. California Ins. Co., supra; Collard v. Universal Auto. Ins. Co., supra.

It is our opinion that Mr. Ebel knew, or at least had he made inquiry would have known, the true status of the title to the Corvette at the time the policy was issued. An insurer need not be directly advised of facts in order to be charged with knowledge of those facts. As Appleman states,

> "Knowledge of facts which the insurer has or should have had constitutes notice of whatever an inquiry would have disclosed and is binding on the insurer. The rule applies to insurance companies that whatever puts a person on inquiry amounts in law to 'notice' of such facts as an inquiry pursued with ordinary diligence and understanding would have disclosed. The insurer's failure to inquire respecting facts avoiding the insurance may, therefore, estop it to object after issuing the policy to the applicant's inability to comply with such conditions."

16A Appleman, Insurance Law and Practice, § 9255, pp. 641–643.

See also Commercial Standard Ins. Co. v. Paul, 35 Tenn.App. 394, 245 S.W.2d 775 (1951); Johnson v. Life Ins. Co. of Georgia, 52 So.2d 813 (Fla.1951); Fecht v. Makowski, 172 So.2d 468 (Fla.App.1965); Travelers Ins. Co. v. Eviston, 110 Ind.App. 143, 37 N.E.2d 310 (1941).

Neither Stanley Zweigart nor Louis Stauffer are named insureds under the policy issued to Zweigart Packing Corporation. Coverage would extend to them only if they come within the scope of the omnibus clause which states that

> "The unqualified word 'insured' includes:
> (1) * * *
> (2) * * *

> (3) any person or organization legally responsible for the use of an owned or hired automobile, provided the actual use is by the named insured or with his permission * * *."

There have been a number of cases, surprisingly similar to the case at bar, from other jurisdictions which have held that where automobile insurance is issued in the name of someone other than the owner of the insured vehicle, and the mistake is the result of the agent's acts or within his implicit or actual knowledge, the true owner of the vehicle and any third party who may drive the vehicle are covered under the omnibus clause when driving with the permission of the "named insured."

In Foote v. Douglas County (Western Cas. & Surety Co.), 29 Wis.2d 602, 139 N.W.2d 628 (Wis.1966), a daughter purchased an automobile, putting the record title and obtaining insurance in her mother's name as the named insured. The daughter then permitted a friend to drive the car and an accident occurred. In holding the insurance company liable, the court stated, quoting from Krebsbach v. Miller, 22 Wis.2d 171, 125 N.W.2d 408, 4 A.L.R.3d 1 (1963),

> "Also, where for all practical purposes the first permittee is the real owner of the car but title has been taken in the name of the named insured for reasons of convenience, the general control and custody of the first permittee is such that, when he grants permission to a third person to operate the insured vehicle, such operation is held to be with the implied permission of the named insured." At 630 of 139 N.W.2d.

Western Cas. & Surety Co. v. Herman, 209 F.Supp. 94 (D.C. Mo.1962), is a similar case. There an insurance policy was issued to the mother as the named insured and sole owner of the vehicle, when in fact her son owned the automobile. He was driving when an accident occurred, and the insurance company sought to escape liability on the grounds that ownership had been misrepresented. The court, however, held

that the insurer had waived ownership as a ground for denying coverage and held that the son was insured under the omnibus clause of the policy because he was driving with his mother's consent. The insurer contended, as appellant contends here, that the mother could not give the consent required by the omnibus clause because she was not the owner of the car. The court, however, rejected the argument, pointing out that "consent" is construed liberally in these clauses.

In Osborne v. Security Ins. Co., 155 Cal.App.2d 201, 318 P.2d 94 (1957), insurance was obtained in the name of the mother, although the son owned the automobile. There the mother gave consent to a third party to drive the car, and an accident occurred. The insurer was under the impression that the mother owned the car, but the court nevertheless held that the omnibus clause covered the third party. Rejecting the insured's argument that the omnibus clause did not apply since the mother who did not own the car was powerless to give her consent, the court stated that the "consent" required by the omnibus clause refers to actual consent, not some theoretical concept. To the same effect are Maryland Cas. Co. v. Baker, 196 F. Supp. 234 (D.C. Ky.1961); M.F.A. Mutual Ins. Co. v. Mullin, 156 F.Supp. 445 (D.C. Ark.1957).

Likewise it is our opinion that one of the named insureds could consent to Stanley Zweigart's use of the Corvette within the meaning of the omnibus clause, even if the car were not owned by a named insured. But in any event, appellant is estopped to contend that Stanley Zweigart is the actual owner of the vehicle. The omnibus clause would cover Stanley Zweigart if he had the permission of a named insured to use the car at the time it was driven by Stauffer with Zweigart present. Maryland Cas. Co. v. Baker, supra. Similarly, Mr. Stauffer would also be covered under the omnibus clause if he were operating the car at the time of the accident with the permission, either express or implied, of a named insured. Pollard v. Safeco Ins. Co., 52 Tenn.App. 583, 376 S.W.2d 730 (1963); Foote v. Western Cas. & Surety Co., supra.

Under this court's decision in Butterfield v. Western Cas. & Surety Co., 83 Idaho 79, 357 P.2d 944 (1960), Zweigart and Stauffer were each covered under the policy issued by appellant. In that case it was held that

"* * * when a general permission is granted by the named insured to use a vehicle, and without any limitation by the named insured against a third person driving, the use of the vehicle by the first permittee is with the permission of the named insured, even though another is driving, provided the use is to serve a purpose, benefit, or advantage of the first permittee." 83 Idaho at 84, 357 P. 2d at 947.

The record in the present case sufficiently establishes that Stanley Zweigart owned the 1964 Corvette and had general permission to use it without any specific prohibition by the named insured against a third person driving it. At the time of the accident Stanley Zweigart was present in the vehicle being driven by Stauffer. These facts are sufficient to bring the present case within the rule announced in Butterfield v. Western Cas. & Surety Co., supra, and consequently Stanley Zweigart and Louis Stauffer were insured under the policy issued by Industrial Indemnity. Respondent, therefore, was entitled to judgment as a matter of law, and the summary judgment was properly granted.

Costs to respondent.

McQUADE, SHEPARD and SPEAR, JJ., concur.

DONALDSON, J., concurs in the conclusion.